UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW J. KING,<br><br>            Plaintiff,<br>vs.<br><br>AMY CALDERWOOD, *et al.*,<br><br>            Defendants. | Case No.: 2:13-cv-02080-GMN-PAL<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment (ECF No. 94) filed by Defendants James G. Cox ("Cox") and Quentin Byrne ("Byrne") (collectively, "Defendants"). Pro se Plaintiff Matthew J. King ("Plaintiff") filed a Response (ECF No. 115),[1] and Defendants filed a Reply (ECF No. 117).[2]

Also pending before the Court are several motions filed by Plaintiff, including Motion to Extend Prison Work Limit (ECF No. 119), Motion for Reinstatement of Defendant Amy Calderwood (ECF No. 120), Motion to Withdraw Motion for Reinstatement (ECF No. 122), and Motion for Order Granting Motion to Extend Prison Work Limit (ECF No. 125).

**I.      BACKGROUND**

This case arises out of a prisoner's Eighth Amendment claim for deliberate indifference to a serious medical need. (*See* Def.'s Mot. for Summ. J. ("Def.'s MSJ") 2:13–15, ECF No. 94).

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding him to standards less stringent than formal pleadings drafted by attorneys. *See* Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Defendants also filed a Motion to Extend Time to File Supplements to Defendant's Motion for Summary Judgment. (ECF No. 95). Plaintiff did not file a Response. "The failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion." D. Nev. Local Rule 7-2(d). Accordingly, Defendants' Motion to Extend Time (ECF No. 95) is granted and the Court will consider Defendants' Supplement (ECF No. 96).

1  Plaintiff Matthew J. King ("Plaintiff") is an inmate incarcerated in the Nevada Department of

2  Corrections ("NDOC"). (*Id.* 2:15–17).  Plaintiff was originally housed in High Desert State

3  Prison ("HDSP") and is currently at Southern Desert Correctional Center ("SDCC"). (*Id.*).

4  　　　　Plaintiff filed his Complaint on September 24, 2013, against numerous employees and

5  officials at HDSP and NDOC, alleging § 1983 violations of "Plaintiff's 8th amend. right as a

6  disabled American seeking rehabilitation by acting deliberately indifferent to pleas for

7  meaningfull [sic] access to substance abuse treatment." (Compl. at 1, 11, ECF No. 7).  Plaintiff

8  sued each Defendant in his or her official capacity. (*See id.* at 3–5).  Specifically, Plaintiff

9  alleged denial of treatment for both substance abuse and Hepatitis-C.  These treatments were

10 related because a prison doctor informed Plaintiff that a mandatory substance abuse treatment

11 program was required before receiving medical treatment for Hepatitis-C. (*See id.* at 4); (*see*

12 *also* State of Nevada Department of Corrections Inmate Grievance History ("Inmate Grievance

13 History") at 23, Ex. C to Def.'s MSJ, ECF No. 94-1) (Grievance #20062956880).

14 　　　　On December 15, 2014, all Defendants from both HDSP and NDOC filed a Motion for

15 Summary Judgment, arguing that nearly all of Plaintiff's claims were mooted by his admission

16 to the substance abuse treatment program and transfer to another facility. (Order 3:4–6, ECF No.

17 58).  Because Defendants asserted that Plaintiff's claims were moot, the Court construed the

18 matter under a 12(b)(1) standard rather than summary judgment. (*Id.* 4:15–17).  The Court

19 granted Defendants' Motion as to the HDSP employees because Plaintiff was placed in and

20 successfully completed substance abuse treatment. (*Id.* 5:24–6:2).  The Court denied the Motion

21 as to the two remaining Defendants, Cox and Byrne, the NDOC officials, finding that

22 insufficient evidence was presented to support adequate and complete medical treatment for

23 Plaintiff's Hepatitis-C. (*See id.* 6:4–18).

24 　　　　On September 4, 2015, Defendants filed the instant Motion for Summary Judgment,

25 asserting that Plaintiff's claims fail on three grounds. (ECF No. 94).  First, Defendants argue

that Plaintiff failed to exhaust his administrative remedies regarding his Hepatitis-C treatment because his prison grievances focus only on substance abuse treatment. (Def.'s MSJ 8:1–22). Second, Defendants contend that they had "no personal participation" in any alleged deprivation of Plaintiff's right to medical treatment. (*Id.* 8:24–10:17). Lastly, Defendants assert that Plaintiff has failed to establish a claim for deliberate indifference to his serious medical needs. (*Id.* 12:1–14:3).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth "specific facts" by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The nonmoving party's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  However, if the evidence of the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (citations omitted).

### III.     DISCUSSION

####      A. Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio,* 557 F.3d 1117, 1119–20 (9th Cir. 2009). "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock,* 549 U.S. 199, 218 (2007).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1169, 1172. Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a). If a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case then proceeds to the merits. *Albino*, 747 F.3d at 1171.

Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation (AR) 740, entitled "Inmate Grievance Procedure," which governs the NDOC grievance policy. (AR 740 at 5, Ex. B to Def.'s MSJ, ECF No. 94-1). In order for a plaintiff to exhaust available remedies, AR 740 first requires the inmate to discuss the issue with a caseworker prior to initiating the grievance process. (AR 740.04 at 8). If the inmate cannot otherwise resolve the issue, then the inmate files an Informal Grievance, which is reviewed, investigated and responded to by the inmate's assigned caseworker, unless it is a medical issue, in which case the charge nurse of the institution should respond. (AR 740.05(2) at 8). If denied, the inmate can then appeal and proceed to the First Level Grievance, which is "responded to by the highest level of Nursing Administration at the institution" for medical issues. (AR 740.06(1)(B)). The third and final administrative proceeding is the Second Level Grievance, at which point the Medical Director reviews and responds to the medical-related grievance. (AR 740.07(1)(D)). For both the Informal Grievance and the First Level Grievance, the prison's response should be provided within forty-five days, and then "the inmate must file an appeal within five (5) days from receipt of the response to proceed to the next grievance level." (AR 740.05(12) at 10). Inmates may proceed to the next grievance level if they do not receive a response within the time frame indicated in the regulation, except for at the Second Level Grievance. (AR 740.03(8)(B) at 7). These three levels constitute the process required for an inmate to exhaust all available NDOC administrative procedures. (*See* AR 740 at 8–11).

Here, Defendants argue that Plaintiff failed to exhaust the issue of deliberate indifference as to his Hepatitis-C treatment. (Def.'s MSJ 8:1–22). The particular grievance at issue is Grievance ID Number 20062956880 (the "Particular Grievance"). (*See* Inmate Grievance History at 23–24). Defendants argue that "the purpose of the [Particular Grievance] was to obtain admission into an NDOC drug and alcohol treatment program so that Plaintiff could concurrently 'get continued medical treatment for [his] Hep-C as stated through HDSP medical

staff as being a requirement.'" (Def.'s MSJ 8:7–10).  Further, Defendants explain, "All responses to Plaintiff's [Particular Grievance] address Plaintiff's admission into a drug and alcohol treatment program." (*Id.* 8:10–12).  Ultimately, Defendants contend that "Plaintiff has never submitted a grievance on any level, at either SDCC or HDSP, regarding his alleged denial of treatment for Hepatitis-C." (*Id.* 8:13–15). The Court disagrees.

While Defendants appear to be arguing that the Hepatitis-C treatment and the substance abuse treatment are two separate grievances, the two issues actually appear to be interrelated.  From the text of the grievances and the responses, it is clear that Plaintiff's original and main concern was the Hepatitis-C treatment.  His Informal Grievance requesting Hepatitis-C treatment specifically states: "I need drug/alcohol treatment and programing in order to get continued medical treatment for my Hep-C as stated through HDSP medical staff as being a requirement." (*See* Inmate Grievance History at 23); (Grievance Statements at 38, Ex. D to Def.'s MSJ, ECF No. 94-1).  Defendants do not dispute that Plaintiff properly proceeded through all three levels requesting the substance abuse treatment. (*See* Grievance Statements at 38, 40–45) (copies of Plaintiff's Informal, First Level, and Second Level Grievance Statements for the Particular Grievance).  Because Plaintiff was requesting the substance abuse treatment under the impression that it was required to obtain Hepatitis-C treatment, the Court finds that the two issues are interconnected and Plaintiff properly exhausted his administrative remedies prior to filing this civil suit. Accordingly, the Court will proceed to the merits.

### B. Deliberate Indifference

Generally, a prisoner's deliberate indifference claims arise from the Eighth Amendment's safeguard against cruel and unusual punishment. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187–88 (9th Cir. 2002).  Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provided medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013)

(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  However, the deliberate indifference test is not an easy test for a plaintiff to satisfy. *Hallett v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) ("The Eighth Amendment is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. Rather, the Eighth Amendment proscribes the unnecessary and wanton infliction of pain").

The test for deliberate indifference contains two parts.  "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096.  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.*  Such deliberate indifference is shown by proving (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.*  However, "an 'inadvertent or negligent failure to provide adequate medical care' alone does not state a claim under § 1983." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice.").

Defendants assert that no genuine issue of material fact exists as to Plaintiff's claim for deliberate indifference because "[i]n the past three years, Plaintiff has been seen by medical providers on a consistent basis for his Hepatitis-C." (Def.'s MSJ 13:6–8).  Defendants provide a Declaration from NDOC Medical Director Dr. Romeo Aranas to support this contention. (Aranas Decl., Ex. F to Def.'s MSJ, ECF No. 96-1).  Dr. Aranas is the Medical Director of NDOC and oversees the advanced Chronic Hepatitis-C treatment program at NDOC's Northern Nevada Correctional Center ("NNCC"). (Aranas Decl. ¶¶ 2, 15).  To determine which inmates require advanced treatment, Dr. Aranas reviews test results and medical records, specifically

examining the inmate's Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula, along with clinical symptoms. (*Id.* ¶¶ 10, 15).  According to Dr. Aranas, "If a patient's APRI Score is above 0.5, there is likely some liver damage (fibrosis).  If the APRI score is above 1.5, the patient likely has, or is quickly approaching, cirrhosis of the liver." (*Id.* ¶ 13).  Dr. Aranas explained that he "almost always decline[s] to recommend an NDOC inmate with Chronic Hepatitis-C, who has an APRI score below 1.0, for advanced forms of Chronic Hepatitis-C treatment due to the risk that drug intervention may cause to a patient with Chronic Hepatitis-C." (*Id.* ¶ 16).

Here, Dr. Aranas determined Plaintiff's most recent APRI score was 0.2, and he found that Plaintiff was "not exhibit[ing] any symptoms of decreased liver function." (*Id.* ¶¶ 17(b)–(c)).  Plaintiff is "currently enrolled in the Chronic Disease Clinic at [SDCC]," where his APRI levels and liver function levels are "monitored on a regular basis approximately every six months." (*Id.* ¶ 19).  NDOC Certified Nurse Nowell Granados oversees the Chronic Disease Clinic at SDCC, in which Plaintiff is enrolled. (Granados Decl. ¶¶ 2–3, 8, Ex. G to Def.'s MSJ, ECF No. 96-1).  According to Nurse Granados, Plaintiff's "liver enzyme function has been tested and analyzed on four (4) separate occasions" in the past eighteen months. (*Id.* ¶ 8).[3]

In Plaintiff's Response, he disputes Dr. Aranas's determination based on "lack of symptoms" because Plaintiff states he has been experiencing painful symptoms. (Pl.'s Resp. at 5–6, ECF No. 115).  Plaintiff also argues that he "has not asked for liver treatment . . . [he] has only asked to be cured of the Hep-C virus that causes liver damage." (*Id.* at 5).  Plaintiff's Response references several doctors, Dr. Hanf and Dr. Sanchez, who may have seen Plaintiff and made notes in Plaintiff's medical chart, but the handwriting is practically illegible. (*See*

---

[3] Both Parties provide Plaintiff's medical chart as an exhibit to the Motion and Response. (*See* Ex. H to Def.'s MSJ, ECF No. 94-1); (Ex. B to Pl.'s Resp., ECF No. 115).  As the Court noted in its previous Order (Order 6:13–16), the handwritten notes in the medical chart are illegible.

*supra* note 3).  Plaintiff states: "Dr. Sanchez on July 22, 2015 recommended Plaintiff for Hep-C treatment and to begin process." (Pl.'s Resp. at 9).

Administrative Regulation 600 dictates the policy for NDOC Health Care Services. (*See* Ex. E to Def.'s MSJ, ECF No. 94-1); (Ex. G to Pl.'s Resp., ECF No. 115).  AR 600(2) states: "The Medical Director has overall responsibility for the clinical operation of the Medical Division." (Ex. G to Pl.'s Resp. at 84).  Therefore, Dr. Aranas, as the Medical Director, is ultimately responsible for the medical decisions in NDOC.  While there is an entry on Plaintiff's medical chart for July 22, 2015, it is not clear exactly what is handwritten.  However, drawing all inferences in favor of Plaintiff, even if Dr. Sanchez[4] recommended Plaintiff for the advanced Hepatitis-C treatment program at NNCC, Dr. Aranas's opinion would have superseded that of Dr. Sanchez because Dr. Aranas both oversees the NNCC advanced Hepatitis-C treatment program and is the NDOC Medical Director.

Plaintiff argues that he should be provided with a drug called "Harvoni" which Plaintiff insists is a "cure" for Hepatitis-C. (*See, e.g.*, Pl.'s Resp. at 27).  In Dr. Aranas's medical opinion, he did not believed that Plaintiff required "drug intervention to treat his Hepatitis-C at this time." (Aranas Decl. ¶ 18).  As such, Plaintiff's contentions constitute a disagreement regarding the appropriate course of treatment.  It is well established that "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  To establish that a difference of opinion amounted to deliberate indifference, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the plaintiff's] health."

---

[4] Neither Party provides any further information about Dr. Sanchez, so it is unclear exactly who he or she is. From Plaintiff's briefing, it appears that Dr. Sanchez may be one of the treating physicians at SDCC.

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  Plaintiff has not provided any evidence to support such a finding.

Plaintiff insists that he "does not have a difference of opinion with medical personel [sic], this difference of opinion is amongst themselves." (Pl.'s Resp. at 27).  However, Plaintiff does not contend that any other physician specifically prescribed Harvoni for him.  To the extent that there was a difference in medical professional opinions regarding Plaintiff, as explained above, Dr. Aranas's opinion would have been the deciding opinion under AR 600 because he is the NDOC Medical Director.

Accordingly, the Court finds that Plaintiff has not offered evidence to demonstrate deliberate indifference on behalf of NDOC.  Defendants are therefore entitled to summary judgment on this claim.[5]

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 94) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Extend Time (ECF No. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Extend Prison Work Limit (ECF No. 119) and Motion for Order Granting Motion to Extend Prison Work Limit (ECF No. 125) are **DENIED as moot**.

---

[5] Because the Court grants Defendants' Motion for Summary Judgment, Plaintiff's Motions to Extend Prison Work Limit (ECF Nos. 119, 125) are denied as moot.  Further, Plaintiff's Motion to Withdraw Motion for Reinstatement of Defendant Amy Calderwood (ECF No. 122) is unopposed. (*See* Non-Opposition, ECF No. 124). Accordingly, the Court grants Plaintiff's Motion to Withdraw. (ECF No. 122).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Withdraw Motion for Reinstatement of Defendant Amy Calderwood (ECF No. 122) is **GRANTED**.  Plaintiff's Motion for Reinstatement (ECF No. 120) is hereby **WITHDRAWN**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this 12 day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge